Genevieve KRUEGER, James Krueger, and Beverly Westman, Plaintiffs and Appellants,

v.

ST. JOSEPH'S HOSPITAL, Minot, North Dakota, Defendant and Appellee,

and

Ohio Medical Products, a division of Airco, Inc., Defendant and Appellee.

Civ. No. 9923.

Supreme Court of North Dakota.

April 23, 1981.

Wheeler, Wolf, Peterson & McDonald, Bismarck, for plaintiffs and appellants; argued by Albert A. Wolf, Bismarck.

McGee, Hankla, Backes & Wheeler, Minot, for defendant and appellee St. Joseph's Hospital, Minot, North Dakota; argued by Richard H. McGee, Minot.

Anderson, Tossett & Dobrovolny, Minot, for defendant and appellee Ohio Medical Products, a division of Airco, Inc.; argued by Andrew R. Tossett, Minot.

PAULSON, Justice.

Genevieve Krueger, James Krueger, and Beverly Westman, the widow and surviving children of Reinholt Rudolph Krueger, respectively, appeal from a summary judgment entered against them on July 30, 1980; from an order denying their motion to alter the judgment entered on August 12, 1980; and from the combined order which denied their motion to vacate the order granting summary judgment and their motion to alter the judgment entered on December 10, 1980. The summary judgment and the orders denying the appellants' motions were issued by the District Court of Ward County. We reverse the summary judgment and remand the case for trial.

On November 20, 1976, Reinholt Rudolph Krueger entered St. Joseph's Hospital in Minot for correction of a bowel obstruction. The correction of this condition required that Krueger undergo surgery, and the surgery was performed on November 20, 1976. During the course of the surgery, the surgeon, Dr. A. M. Cameron, observed an irregularity in Krueger's respiration. It was alleged in the plaintiff's complaint that the irregularity was the result of chest hyper-

inflation which was caused by a defective plate valve in a machine used for respiration during surgery; that the valve was locked in a closed position and gave Krueger a full cycle of inhalation but did not allow exhalation; and that a different machine was used to assist respiration. Dr. I. J. Epstein was asked to help correct the breathing problem. Despite the efforts made by both doctors to resuscitate Krueger, he died on November 20, 1976. Shortly after Krueger's death, Krueger's attending physicians advised the appellants that Krueger had died of heart failure. The staff did not disclose the facts regarding the malfunction of the machine. The death certificate, which was signed on November 24, 1976, indicated that Krueger's death was caused by cardiac arrest.

In August of 1979, the appellants received an anonymous letter which contained copies of the medical records of St. Joseph's Hospital regarding Krueger's death. The records disclosed difficulty with the respiratory machine and its contribution to Krueger's death. The appellants thereafter commenced this action on February 25, 1980. St. Joseph's and Ohio Medical Products, the manufacturer of the machine, were named as defendants in the complaint. The complaint alleged that Ohio Medical Products had breached express and implied warranties and was liable to the appellants pursuant to the doctrine of strict liability in tort. The complaint also contained the following allegations:

"X.

"That plaintiffs further allege that defendant St. Joseph's Hospital should have known that the death of the said Reinholt Krueger was caused by the failure of said anaesthesia machine to operate properly during the course of the surgical procedure, and had a duty to inform the plaintiffs of said fact immediately after the death occurred, but that the defendants failed to carry out that duty and thereby deprived the plaintiffs of that information until plaintiffs became aware thereof from other sources approximately three (3) years after the death of Reinholt Krueger.

"XI.

"That based upon the allegations contained in Paragraph X, the defendants are liable to the plaintiffs for damages in the amount heretofore stated and further are estopped from claiming any defenses based on time limitations for the commencement of this action by the plaintiffs."

On May 20, 1980, Ohio Medical Products submitted a motion for an order dismissing the complaint on the ground that the action was barred by the statute of limitations. On May 28, 1980, St. Joseph's Hospital presented a motion for summary judgment on the ground that the action was a wrongful death action barred by the statute of limitations set forth in § 28–01–18(4) of the North Dakota Century Code. On July 30, 1980, the district court entered summary judgment in favor of St. Joseph's and Ohio Medical Products. Thereafter, the appellants presented a motion to alter the judgment on the ground that the district court's memorandum opinion did not consider the allegations contained in paragraph XI of their complaint regarding estoppel. The motion was denied and an order to this effect was issued on August 12, 1980. The appellants then submitted a motion to vacate the order granting summary judgment, the summary judgment, and the order denying the motion to alter the judgment. The combined order denying the motion was entered on December 10, 1980. The appellants filed their notice of appeal on December 19, 1980.

The sole issue presented for our consideration is whether or not the district court properly granted summary judgment against the appellants on the basis that their action for wrongful death was barred by § 28–01–18(4), N.D.C.C., which provides as follows:

"*28–01–18. Actions having two-year limitations.* The following actions must be commenced within two years after the cause of action has accrued:

. . . . .

"4. An action for injuries done to the person of another, when death ensues from such injuries, and the cause of action shall be deemed to have accrued at the time of the death of the party injured."

On appeal from a summary judgment, the evidence must be viewed in the light most favorable to the party against whom the summary judgment was granted. *Winkjer v. Herr*, 277 N.W.2d 579 (N.D. 1979); *Rice v. Chrysler Motors Corporation*, 198 N.W.2d 249 (N.D.1972). The party presenting a motion for summary judgment has the burden of clearly showing that there is no genuine issue as to any material fact raised by the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. Rule 56(c) of the North Dakota Rules of Civil Procedure. Summary judgment is not appropriate if the moving party is not entitled to judgment as a matter of law or if reasonable differences of opinion exist as to the inferences to be drawn from undisputed facts. *Ness v. St. Aloisius Hospital*, 301 N.W.2d 647 (N.D. 1981); *Helbling v. Helbling*, 267 N.W.2d 559 (N.D.1978). Whenever the court must make a finding of fact, summary judgment is inappropriate. *Albers v. NoDak Racing Club, Inc.*, 256 N.W.2d 355 (N.D.1977).

It is an undisputed fact that the appellants were not aware of the actual cause of Krueger's death on November 20, 1976; rather, the appellants learned of the actual cause of death through an anonymous letter which Mrs. Krueger received in the month of August, 1979. The appellants' action is one for wrongful death and, in *Sheets v. Graco, Inc.*, 292 N.W.2d 63 (N.D.1980); and in *Ness v. St. Aloisius Hospital*, 301 N.W.2d 647 (N.D.1981), we established that subsection 4 of § 28–01–18, N.D.C.C., constitutes the limitation provision applicable to actions for wrongful death. In *Hubbard v. Libi*, 229 N.W.2d 82 (N.D.1975), we established that the cause of action for wrongful death resulting from medical malpractice accrues at the time of death of the party injured. While the instant case contains no allegation as to medical malpractice, it is clear that the appellants' cause of action, if it accrued at the time of Krueger's death, would be barred by the two-year limitation provision contained in § 28–01–18(4), N.D. C.C.

The appellants contend that St. Joseph's and Ohio Medical Products are estopped from claiming any defenses based upon § 28–01–18, N.D.C.C., because of the provisions of § 28–01–24, N.D.C.C., which provides as follows:

"*28–01–24. Limitations on claims for relief fraudulently concealed.*—When, by fraud or fraudulent concealment, a party against whom a cause of action exists prevents the person in whose favor such cause of action exists from obtaining knowledge thereof, the latter may commence an action within one year from the time the cause of action is discovered by him or might have been discovered by him in the exercise of diligence. Such fraud or fraudulent concealment must be established to the satisfaction of the court or jury, as the case may be, by a fair preponderance of the evidence."

St. Joseph's and Ohio Medical Products contend that the appellants are attempting to apply the "discovery rule" applicable to medical malpractice actions to actions based upon wrongful death. The discovery rule is contained in subsection 3 of § 28–01–18, N.D.C.C., which is concerned with malpractice actions. In *Hubbard v. Libi*, 229 N.W.2d 82 (N.D.1975), and again in *Ness v. St. Aloisius Hospital*, 301 N.W.2d 647 (N.D. 1981), we stated that the discovery rule does not apply to actions for wrongful death. The district court reasoned that § 28–01–24, N.D.C.C., also embodied the discovery rule and for this reason the rule enunciated in *Hubbard v. Libi, supra*, would apply to the instant case. In addition, the district court reasoned that a mere failure to disclose facts would not constitute fraudulent concealment. Finally, the court stated that the appellants' complaint did not allege fraudulent concealment and that the appellants could have availed themselves of an opportunity to examine the medical records as early as November 20, 1976, but had

not examined the records and were, therefore, barred from instituting the action against St. Joseph's and Ohio Medical Products.

The issue of whether or not § 28–01–24, N.D.C.C. applies to the limitation provision for wrongful death actions, that is, to § 28–01–18(4), N.D.C.C., is one of first impression. Our analysis of the issue requires that we first consider the question of whether or not the discovery rule referred to in *Hubbard v. Libi, supra*, is synonymous with language found in § 28–01–24, N.D.C.C. *Hubbard, supra*, involved an action for wrongful death caused by medical malpractice. The analysis of the "discovery rule" in *Hubbard* arose because the plaintiffs urged that the rule be extended to wrongful death actions based upon medical malpractice. No allegation of fraud, fraudulent concealment, or estoppel was present in *Hubbard*. Similarly, *Ness v. St. Aloisius Hospital, supra*, also involved an attempt to extend the "discovery rule" to wrongful death actions based upon medical malpractice and no allegation of fraud, fraudulent concealment, or estoppel was present in that case. The situations in *Hubbard* and *Ness* are distinguishable from that in the instant case because estoppel, fraud, and fraudulent concealment are alleged in the instant case.

■ Section 28–01–24, N.D.C.C., contains a "discovery rule" which applies in situations where a party fraudulently prevents another from obtaining knowledge concerning a cause of action. This section is concerned with both fraud and fraudulent concealment, rather than with malpractice actions. Thus, the "discovery rule" applicable under § 28–01–18(3), N.D.C.C., is distinct from the rule contained in § 28–01–24, N.D.C.C. In *Linke v. Sorenson*, 276 F.2d 151 (8th Cir. 1960), the court construed §§ 28–0118(1), (3) and 28–0124, North Dakota Revised Code of 1943. Under the court's reasoning the normal statutory time limitation applicable to a cause of action (in *Linke*, the cause of action concerned assault, battery, and medical malpractice) would apply unless the defendants by fraud or fraudulent concealment prevented the plaintiffs from obtaining knowledge of the existence of the cause of action. If fraud or fraudulent concealment was involved, the one-year limitation period contained in § 28–01–24, N.D.C.C., would arise after the cause of action is discovered or might have been discovered in the exercise of diligence. We agree with the court's construction in *Linke* of § 28–0124, N.D.R.C.1943 [now codified as § 28–01–24, N.D.C.C.], and we note that the same result is now achieved by § 28–01–18(3), N.D.C.C., which extends the limitation period in cases where fraudulent conduct is involved.

■ Section 28–01–24, N.D.C.C., is a superimposing statute which applies only where fraud or fraudulent concealment is involved.[1] The discovery rule alluded to in *Iverson v. Lancaster*, 158 N.W.2d 507 (N.D. 1968), and now contained in § 28–01–18(3), N.D.C.C., is not similar to the rule embodied in § 28–01–24, N.D.C.C., because fraud and fraudulent concealment, rather than mere nondisclosure or nondiscovery of facts giving rise to a cause of action, are involved. The discovery rule applicable in malpractice actions does not apply to wrongful death actions because it is the fact of death itself which should indicate a starting point for inquiry regarding a cause of action for wrongful death. When the facts used to determine whether a cause of action exists are equally available to the plaintiff, no additional aid in terms of a discovery period is necessary.[2] In the context of a wrongful death action, this equality exists when death occurs, while in malpractice actions the difficulty of ascertaining the facts indi-

1. Another example of a superimposing statute is § 28–01–25, N.D.C.C., which tolls the normal operation of the statute of limitations for certain disabilities. See *Sprecher v. Magstadt*, 213 N.W.2d 881 (N.D.1973).

2. It is generally held that in the absence of fraud, neither the ignorance of the right to bring an action or the mere silence of one against whom the action may be brought interrupts the normal operation of the statute of limitations. See *Gipson v. First National Bank of Bismarck*, 97 N.W.2d 671 (N.D.1959).

cating malpractice necessitates a "discovery rule". The situation is much different in a wrongful death action when the facts used to determine whether a cause of action exists are rendered unascertainable due to fraud or fraudulent concealment. In this context, § 28–01–24, N.D.C.C., applies to wrongful death actions despite the fact that death has occurred, and the essential element giving rise to a cause of action for wrongful death is, generally, the death of the injured party.

St. Joseph's and Ohio Medical Products next contend that the appellants have not alleged fraud of fraudulent concealment in their complaint and, thus, are precluded from raising the issue for the first time on appeal. In their complaint, the appellants allege that St. Joseph's and Ohio Medical Products are estopped from asserting any defenses in regard to time limitations for commencing the action. We believe that the complaint adequately informed the appellees of the substance of the contention by the appellants that fraud or fraudulent concealment are present in this case. The fact that estoppel is alleged in the complaint informed St. Joseph's and Ohio Medical Products that they knew or should have known of the substance of plaintiffs' contention because estoppel is available when one is alleged to have committed fraudulent acts. Our conclusion is supported by the North Dakota Rules of Civil Procedure, which provide that pleadings are to be construed to do substantial justice and that a short and plain statement of the claim showing that the pleader is entitled to relief is all that is required. Rules 8(a) and 8(f), N.D.R.Civ.P.

Rule 9(b), N.D.R.Civ.P., requires that the "circumstances constituting fraud . . . shall be stated with particularity". It is not necessary to specifically state the word "fraud" in the complaint. *In re Estate of Lorimor*, 216 N.W.2d 349 (Iowa 1974). The reference in the rule to "circumstances" requires that matters such as the place and content of the alleged fraudulent conduct, the identity of the person or persons alleged to have engaged in the conduct, and what was gained by the person or persons as a result of the conduct, be contained in the complaint. *Trussell v. United Underwriters, Ltd.*, 228 F.Supp. 757 (D.Colo.1964). The particularity requirement of Rule 9(b), N.D.R.Civ.P., does not render the principles contained in Rule 8(a) and 8(f), N.D.R.Civ.P., inapplicable because the manifest purpose of the rules of pleading is the attainment of flexibility and simplicity in pleading. Although more specificity is required under Rule 9(b) than under Rule 8, the rules must be read in conjunction with one another. *Production Credit Ass'n of Mandan v. Olson*, 280 N.W.2d 920 (N.D.1979). The rules of pleading are intended to address the issue of whether or not the pleader has a cause of action rather than whether or not the pleader has properly stated the cause of action.

The doctrine of equitable estoppel is now contained in § 31–11–06, N.D.C.C. The elements necessary to establish equitable estoppel were stated by this court in *Farmers Cooperative Ass'n of Churchs Ferry v. Cole*, 239 N.W.2d 808 (N.D.1976) and in *Fetch v. Buehner*, 200 N.W.2d 258 (N.D. 1972). By invoking the doctrine of estoppel, the appellants have sought to deprive St. Joseph's and Ohio Medical Products of the affirmative defense of the statute of limitations as a bar to the cause of action for wrongful death.[3] The determination of whether or not fraud or fraudulent concealment were present and barred the appellees from asserting the statute of limitations as a defense certainly involves genuine issues of material fact. The district court's determination that fraud or fraudulent concealment is not present in the instant case

---

**3.** Much case law exists which supports the appellants' argument that estoppel may be used to prevent the appellees and defendants from pleading the statute of limitations as an affirmative defense. See, generally, Annot. 43 A.L.R.3d 429 (1972). The concept has also been recognized and accepted by the United States Supreme Court in *Glus v. Brooklyn Eastern Dist. Terminal*, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959). See also *Schaffer v. Larzelere*, 410 Pa. 402, 189 A.2d 267 (1963).

involves the determination of factual issues; when the court must make a finding of fact, summary judgment is inappropriate. *Albers v. NoDak Racing Club, Inc.*, 256 N.W.2d 355 (N.D.1977).

St. Joseph's and Ohio Medical Products contend that estoppel and the discovery rule are substantially equivalent and that the appellants' assertion of estoppel is merely another attempt to extend the discovery rule to wrongful death actions. We disagree with this contention for several reasons. The discovery rule focuses upon the knowledge of the injured party and the availability of information regarding the existence of a cause of action for the injury. The rule operates to extend the statute of limitations beyond its normal time period if the injured party does not possess information sufficient to inform the ordinary, reasonable, and prudent person in the injured party's position of the existence of a cause of action. Estoppel, in the context where it is urged as a defense to the statute of limitations, is concerned with the actions of one guilty of wrongdoing and operates to preclude the application of the statute of limitations as a defense by the wrongdoer. While the discovery rule is not applicable to actions for wrongful death, estoppel, whether based upon fraud, fraudulent concealment, misrepresentation, or deception, is available in wrongful death actions. See *Schaffer v. Larzelere*, 410 Pa. 402, 189 A.2d 267 (1963).

The district court determined that for the principles of fraud or fraudulent concealment to apply in the instant case it would require that St. Joseph's Hospital would have had to employ an artifice designed to mislead or hinder the appellants' acquisition of information disclosing a right of action. While we have stated earlier that this determination involves factual issues in the province of the jury, we also note that fraud can exist without the making of a positive false statement. *Stude v. Madzo*, 217 N.W.2d 5 (N.D.1974); *Diemert v. Johnson*, 299 N.W.2d 546 (N.D.1980). In addition, the suppression of a material fact, which a party is bound in good faith to disclose, is equivalent to a false representation. *Verry v. Murphy*, 163 N.W.2d 721 (N.D.1969). Fraud may arise not only from misrepresentation but from concealment as well. For concealment to constitute fraud, there must be suppression of facts which one party has a legal or equitable obligation to communicate to another. One who stands in a confidential or fiduciary relationship to another party must disclose material facts and must reveal enough information to prevent misleading the other party. See *Klein v. First Edina Nat. Bank*, 293 Minn. 418, 196 N.W.2d 619 (1972); *Guy v. Schuldt*, 236 Ind. 101, 138 N.E.2d 891 (1956).

Because genuine issues of material fact remain as to whether or not the appellees' actions were of such a nature as to deprive them of the statute of limitations as a defense, the summary judgment issued by the district court is erroneous. In addition, the appellees were not entitled to judgment as a matter of law because the discovery rule contained in § 28–01–24, N.D.C.C., is not governed by the principle enunciated in *Hubbard v. Libi*, 229 N.W.2d 82 (N.D.1975), to the effect that the discovery rule may not be extended to wrongful death actions.

For reasons stated in this opinion, the summary judgment is reversed and the case is remanded for trial.

ERICKSTAD, C. J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.